UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

DOUG LEWIS HENNING,

                Petitioner,                Case No. 1:07-cv-534

v.                                      Honorable Robert J. Jonker

JOHN PRELESNIK,

                Respondent.

_____/

### REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pleaded guilty to car jacking, MICH. COMP. LAWS § 750.529a, assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, fourth-degree fleeing a police officer, MICH. COMP. LAWS § 750.479a, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. The Saginaw County Circuit Court sentenced him to terms of incarceration of 16 to 30 years, 9 to 20 years, 32 to 48 months and a consecutive term of 2 years, respectively. In his *pro se* amended petition, Petitioner raises four grounds for relief, as follows:

    I.      THE TRIAL COURT FAILED TO ESTABLISH A SUFFICIENT FACTUAL BASIS FOR POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY

    II.     PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL PRIOR TO HIS DECISION TO WAIVE HIS RIGHT TO TRIAL

III. PETITIONER WAS DENIED DUE PROCESS AND AN INDIVIDUALIZED SENTENCE WHERE THE COURT ASSUMED THAT THERE WAS NO DIFFERENCE IN CULPABILITY BETWEEN THE PETITIONER AND CO-DEFENDANT

IV. PETITIONER IS ENTITLED TO RESENTENCING FOR CARJACKING WHERE HE WAS ASSESSED POINTS UNDER OFFENSE VARIABLES OF THE STATUTORY GUIDELINES FOR FACTS NOT ADMITTED BY HIM OR FOUND BY A JURY, IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS UNDER *BLAKLEY V. WASHINGTON*

Respondent has filed an answer to the amended petition (docket #15) stating that the grounds should be denied because they are barred by the statute of limitations or are noncognizable state law claims which have no merit. Upon review and applying the AEDPA standards, I find that all grounds are without merit. Accordingly, I recommend that the amended petition be denied.

## Procedural History

### A.    Trial Court Proceedings

The state prosecution arose from a car-jacking that occurred in the parking lot of a bar called the Watering Trough in Saginaw County, Michigan, on February 16, 2001. Petitioner, Deandre Welch, Edward Lewis and Markees Fordham arrived in a Chevrolet Malibu at the Watering Trough. (Preliminary Examination Hearing (PE) Tr. at 54, 57,83 , docket #18.) After they arrived, Welch and Henning split up from Fordham and Lewis. (PE Tr. at 58.)

The victim, Ricardo Gutierrez, arrived at the Watering Trough just after midnight, driving his friend's 1999 Ford Mustang. (PE Tr. at 7, 20.) As he was getting ready to park, two black men approximately nineteen or twenty years old approached his car window and told him to "give up the car." (PE. Tr. at 8-9.) Then one of the men began to hit Gutierrez in the head with the gun. (PE Tr. at 9.) He was hit in the head approximately fifteen or twenty times. (PE Tr. at 10.)

The men told Gutierrez to "get out the car or I'm gonna kill you." (PE Tr. at 10.) The man without the gun pulled Gutierrez through the car window. (PE Tr. at 12-13.) After pulling Gutierrez away from the car door, both men got in the car and drove away. The man with the gun drove the car. (PE Tr. 15-16.)

Markees Fordham testified that Petitioner and Welch drove up in a green Mustang to the Malibu and waved him to follow. (PE Tr. at 60-62.) They drove for a little while until the Mustang was pulled over by the police. (PE Tr. at 64-66.) At that time, Petitioner jumped into the Malibu with Fordham and Lewis and they continued driving. (PE Tr. at 66.) They were stopped by the police at a gas station soon afterwards. (PE Tr. at 73-74.)

About twenty minutes after the attack, the police asked Gutierrez if he would be willing to come with them to identify suspects. (PE Tr. at 38.) He was first taken to a nearby gas station to view a suspect in a police car. He did not identify the man as one of his attackers. (PE Tr. at 41-42.) He was then taken to a nearby road to look at three additional suspects, each being held in a separate police car. He identified two of the men as his attackers. (PE Tr. at 42-43.)

At the preliminary examination, Gutierrez identified Petitioner as the lighter-skinned male who attacked him, who held the gun and who drove the Mustang. (PE Tr. at 16, 18.) He identified Welch as the man who pulled him out of the car window. (PE Tr. at 18.)

Petitioner was charged with car-jacking, assault with intent to do great bodily harm less than murder, fourth-degree fleeing a police officer, possession of a firearm during the commission of a felony and assault with intent to commit murder. At the preliminary examination on March 16, 2002, the Saginaw County District Court refused to bind him over on the charge for assault with intent to commit murder, but bound him over on all other charges. (PE Tr. at 170-71.)

- 3 -

On April 9, 2001, an arraignment hearing was held in Saginaw County Circuit Court. Petitioner stood mute as to all counts. (Arraignment Hearing Tr. at 4, docket #19.)

Trial was set for August 14, 2001. Before the trial was scheduled to begin, a hearing was held regarding the prosecution's motion to amend the Information to include a count of assault with intent to murder. (Plea Tr. at 3, docket #20.) After hearing argument from counsel and reviewing the preliminary examination transcript, the court took the motion under advisement and scheduled a hearing on the motion for the next morning. (Plea Tr. at 8.) The court excused the waiting jurors until the next day because Petitioner was not properly clothed. After the court's ruling, Petitioner's counsel indicated that Petitioner wanted to plead guilty. The court called a brief recess to allow counsel time to confer with Petitioner. (Plea Tr. at 9-10.)

During the recess, the prosecutor indicated that, in exchange for the plea, he would drop the motion to add assault with intent to murder. The court also consented to a *Cobbs* agreement[1] that the maximum minimum sentence combined for all four counts would be no greater than eighteen years. (Plea Tr. at 10-11.) After the recess, Petitioner pleaded guilty to car-jacking, assault with intent to do great bodily harm less than murder, fourth-degree fleeing a police officer and possession of a firearm during the commission of a felony.

On September 26, 2001, Petitioner was sentenced to concurrent terms of incarceration of 16 to 30 years for car-jacking, 9 to 20 years for assault with intent to do great bodily harm less than murder, 32 to 48 months for fourth-degree fleeing a police officer, and a consecutive term of 2 years for possession of a firearm during the commission of a felony. (Sentencing Transcript (Sen.

---

[1] After *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993). Under a *Cobbs* agreement, the court indicates a tentative sentence at the time of the plea. If the court determines at sentencing that the sentence should be higher, the defendant must be afforded the option of withdrawing the plea.

Tr.) at 20.)  This sentence comported with the *Cobbs* agreement, as the minimum sentence was 18 years.

### B.    Direct Appeal

In 2001, Petitioner timely requested appointment of appellate counsel, which was denied.  In 2005, the United States Supreme Court held in *Halbert v. Michigan*, 545 U.S. 605 (2005) that the Due Process and Equal Protection Clauses require appointment of counsel for indigent defendants convicted on pleas of guilty or nolo contendere who seek access to first-tier review in the Michigan Court of Appeals, even though such review is discretionary under state law.  Michigan Court Rule 6.425(G)(1)(c) was adopted in 2005 to conform to the ruling in *Halbert*.  See MICH. CT. R. 6.425 advisory committee's notes.  After *Halbert*, Petitioner again sought appointment of counsel, which was granted on August 9, 2005.  (Am. Pet.  at 2.)

According to the amended petition, Petitioner's appellate counsel filed a "Motion for Plea Withdrawal and/or Resentencing" in Saginaw County Circuit Court simultaneously with a delayed application for leave to appeal in the Michigan Court of Appeals on September 20, 2005. (Am. Pet.  at 2.)  The circuit court stayed its proceedings pending the resolution of *People v. Houlihan*, No. 128340, 703 N.W.2d 473 (Mich. Sept. 23, 2005).  (Am. Pet., Ex. A, Stip. and Order, Dec. 1, 2005.)  The Michigan Supreme Court issued an order holding *Houlihan* in abeyance pending the Sixth Circuit's decision in *Simmons v. Metrish*, No. 03-2609.

On October 21, 2005, the Michigan Court of Appeals denied Petitioner's request for leave to appeal "for lack of merit in the grounds presented." (*See* 10/21/2005 Mich. Ct. App. Order, docket #22.)  Petitioner sought leave to appeal to the Michigan Supreme Court raising the same four grounds.  By order entered June 21, 2006, the Michigan Supreme Court denied his application for

- 5 -

leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Order, docket #23.)

This resulted in the anomalous situation that the Michigan Court of Appeals and Michigan Supreme Court denied his applications for leave to appeal prior to the circuit court's determination of his motion for plea withdrawal or re-sentencing. After Petitioner's application for leave to appeal was denied by the Michigan Supreme Court, Petitioner stipulated, through counsel, to withdraw his motion for re-sentencing still pending before the Saginaw County Circuit Court. (Mot. to Lift Stay, Ex. 4, docket #7-2.)

Petitioner raises the same grounds in his amended habeas petition that were raised before the Michigan Court of Appeals and Michigan Supreme Court.

## C.     Post-conviction relief

Petitioner did not file a motion for relief from judgment.

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411;

*accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

**<u>Discussion</u>**

I.      **Guilty Plea**[2]

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claims do not challenge the power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of

---

[2]Respondent asserts that Petitioner's habeas petition is time-barred. The Court has considered Respondent's argument and finds that the petition was timely filed under § 2244(d)(1)(C).

factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Alford*, 400 U.S. at 31 ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and he must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *see also Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protections he is waiving. *Henderson*, 426 U.S. at 645 n. 13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have the

advice of competent counsel available to him.  *See Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).   The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

### A.    Insufficient Factual Basis

In Ground I, Petitioner asserts that he is entitled to withdraw his guilty plea because the trial court failed to establish a sufficient factual basis that he possessed a firearm during the commission of a felony.  (Am. Pet.  at 6.)  The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. The state courts are not constitutionally required to establish a factual basis for an otherwise voluntary and intelligent plea. *See Alford*, 400 U.S. at 37-38; *Roddy*, 516 F.2d at 1385; *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)).  "*Alford* held that there is no constitutional bar to accepting a guilty plea in the face of an assertion of innocence, so long as a defendant voluntarily, knowingly, and understandingly consents to be sentenced on a charge.  This being the rule, there is no constitutional requirement that a trial judge inquire into the factual basis of a plea."  *Roddy*, 516 F.2d at 1385.   Additionally, a state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).

The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, neither the adequacy of the factual basis for Petitioner's guilty plea nor the question whether Petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is reviewable in habeas corpus.

### B.	Knowing and Voluntary Plea

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20, 29-30 (1992). The plea transcript submitted in this case shows that the plea was knowing and voluntary:

> THE COURT: All right. Do you understand that if I accept your plea of guilty to the charges, as indicated, and your acknowledgment, you may be sentenced to the possible penalties that I told you about in this proceeding; do you understand that's a possibility?
>
> THE DEFENDANT: Yes, sir.

THE COURT:  Are you currently under the influence of any alcohol or medication, prescribed or otherwise, as we speak this afternoon?

THE DEFENDANT: No, sir.

THE COURT: All right.  And how do you wish to plead to Count I, car-jacking; Count II, assault with intent to - - excuse me, Count III, possession of firearm while committing a felony; Count IV, police officer, fleeing, fourth degree?  And Mr. Duggan what are the other two counts here?  I'm looking at the complaint and warrant.  How are they listed on the Information, please?

MR. DUGGAN:  The order of charges is car jacking I; Count II is great bodily harm; III is felony firearm; IV is fleeing and eluding.

MR. GUST: We're pleading guilty to all those offenses.

THE COURT: Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You're pleading guilty because you are guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Are you doing so freely and voluntarily[?]

THE DEFENDANT: Yes, sir.

THE COURT: You understand that there has been a plea sentence agreement in this case, as we stated earlier?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the Court can accept it or reject it, do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT:  In accepting it, I can do so after giving due consideration to a presentence report, in which case I'm then bound to follow the sentence recommendation that was suggested by the prosecutor.  Do you understand that? In other words, if I accept your guilty pleas, I'm going to order that a presentence report be done.

THE DEFENDANT: Uh-huh.

THE COURT: And if I review that presentence report, I'm then bound to follow the sentence recommendation that the maximum on any minimum offense would be 18 months. Do you understand that?

THE DEFENDANT: Okay.

MR. DUGGAN: You Honor, it is not a sentence recommendation, it's a Cobbs finding, and you said months instead of years.

THE COURT: Excuse me, I apologize. You're correct. It's 18 years, instead of months. Do you understand that?

THE DEFENDANT: So you're saying that it can't exceed 18 months?

THE COURT: 18 years.

THE DEFENDANT: Oh, yeah, 18 years.

THE COURT: Yes.

THE DEFENDANT: Correct.

THE COURT: As was mentioned earlier on, however that ends up being broken down on the - - on all of the charges. That's the maximum that would be imposed.

THE DEFENDANT: Yes, I understand, yes, sir.

THE COURT: All right. And that was - - and counsel is correct, I stand corrected, that was pursuant to a Cobbs agreement. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And Mr. Gust, is that correct?

MR. GUST: That's correct, Your Honor.

THE COURT: And if the Court goes outside of that Cobbs agreement, if I come back after reviewing the presentence report, and decide that you're to be sentenced

to more time than that, you would be given an opportunity to withdraw your plea, do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Has anyone promised you anything beyond what's been stated on the record?

THE DEFENDANT: No, sir.

THE COURT: Anyone told you your sentence would be lighter, other than what may have been stated on the record?

THE DEFENDANT: No, sir.

THE COURT: Anyone threatened you in any way?

THE DEFENDANT: No, sir.

THE COURT: Are counsel aware of any threats, promises or inducements in this matter, other than those stated on the record, Mr. Duggan [defense counsel]?

MR. DUGGAN: None, your Honor.

(Plea. Tr., docket # 20, at 21-25.) The court found that the plea was "understandingly knowingly, voluntarily and accurately made." (*Id.* at 28.)

The plea transcript reflects that Petitioner entered his guilty plea without actual or a threat of physical harm or mental coercion. Petitioner stated affirmatively that he understood the sentence agreement as stated on the record and the consequences of pleading guilty. Therefore, Petitioner's plea was made knowingly and voluntarily. Petitioner has submitted nothing to satisfy his "heavy burden" to overcome the state court's findings.

### C.     *Ineffective Assistance of Counsel*

In Ground II, Petitioner argues that he was denied effective assistance of counsel prior to his decision to plead guilty. (Am. Pet. at 7.)

Petitioner does not meet the *Strickland* standard to demonstrate ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. *Id*. at 687-88. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 687-89. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (finding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

Under *Hill*, a habeas petitioner attempting to challenge a guilty plea on the basis of misadvise of counsel bears the burden of showing two propositions: (1) that the attorney rendered misadvice, falling outside the range of competence demanded of attorneys in criminal cases under the standard of *Strickland*; and (2) that there is a reasonable probability that, but for counsel's errors,

petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 56-60; *see Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993). Where a petitioner does not allege facts showing constitutional ineffectiveness and prejudice, an evidentiary hearing is not required and summary dismissal is appropriate. *Hill,* 474 U.S. at 60.

Petitioner argues that counsel was ineffective because he did not move to suppress the "unreliable and unconstitutional eye-witness identification." (Am. Pet. at 7.) Petitioner refers to the on-scene identification of him by Gutierrez, the victim of the car-jacking. Petitioner argues that it was unreliable and unconstitutional because the police asked Gutierrez to identify him while he was in a police cruiser. (*Id.* at 7.) According to Gutierrez's testimony at the preliminary hearing, the police asked him if he would be willing to identify the people who attacked him soon after the incident while he was still at the crime scene. (PE Tr. at 39.) The police first took Gutierrez to a gas station and showed him one man who was sitting in a police car and asked if that was one of the men who attacked him. Gutierrez did not identify that suspect as one of his attackers. (PE Tr. at 42.) The police then took him to another road nearby where there were three additional suspects. Gutierrez identified Petitioner and Welch as the men who attacked him.

It has long been accepted that "[t]he admission of evidence derived from a suggestive identification procedure violates a defendant's right to due process if the confrontation leading to the identification was 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) and citing *Neil v. Biggers*, 409 U.S. 188, 197 (1972)). To determine whether the admission of identification testimony constitutes a due process violation, a court must undertake a two-step inquiry. *Haliym*, 492 F.3d at

704. It must first be determined whether the identification was "unnecessarily suggestive ." *Id.* If such is the case, the court must consider "whether the evidence was nevertheless reliable despite the impermissible suggestiveness of the identification procedure." *Id.*

Determining whether an identification procedure is unnecessarily suggestive "depends upon whether the witness's attention was directed to a suspect because of police conduct." *Id.* If the identification procedure is found to be unnecessarily suggestive, the court must determine "whether, under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)). The Supreme Court has held that a court must consider the following factors to determine whether a suggestive identification is nonetheless reliable: (1) the witness' opportunity to view the suspect; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the time between the crime and the identification. *Haliym*, 492 F.3d at 704 (citing *Manson*, 432 U.S. at 114 and *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

"If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, then no due process violation has occurred." *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). "As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification." *United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir.1987).

Petitioner argues that the identification process was suggestive because Gutierrez's attention was directed to Petitioner while he was in a police car by himself at the time Gutierrez

viewed and identified him. The Sixth Circuit has held that bringing crime victims immediately to the scene of the crime to identify a defendant is not impermissible or a violation of due process. *See Bruner v. Perini*, 875 F.2d 531, 534-35 (6th Cir. 1989); *Stidham v. Wingo*, 482 F.2d 817, 818-19 (6th Cir. 1973); *see also United States v. Craig*, 198 Fed. Appx. 459, 466 (6th Cir. 2006). On-scene or field identifications "are essential to free innocent suspects and to inform the police if further investigation is necessary." *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998); *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987) (on-scene confrontations allow identification "before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons").

Here, prior to making the identification, Gutierrez was not shown any pictures, and he did not view a line-up. (PE Tr. at 43-44.) He was taken to four different vehicles, each containing one suspect. After viewing and not identifying the first suspect, Gutierrez viewed the additional three suspects – each in a separate police car. When Gutierrez saw the other suspects, including Petitioner, he identified two of them as the men who attacked him. (PE Tr. at 42-43.) As a result, each of the four individuals was viewed under identical suggestive circumstances. Gutierrez did not identify the first suspect he was shown as a man who attacked him, and he only identified two of the other three suspects as the men who attacked him. (PR. Tr. 42.) As a consequence, the circumstances under which Petitioner was identified were not unduly suggestive.

Even assuming that the identification procedure was unnecessarily suggestive, the totality of the circumstances supports that the identification was nonetheless reliable considering the factors set forth in *Biggers*. 409 U.S. at 199-200. First, Gutierrez testified at the preliminary hearing that both before and during the attack he was able to see the two men who attacked him well enough

- 19 -

to identify them in court.  (PE Tr. at 17.)  With respect to the second factor, the reliability of an identification is increased where the witness "was able to view the assailant with a heightened degree of attention, as compared with disinterested bystanders or casual observers." *Haliym*, 492 F.3d at 705.  In this case, Gutierrez's attention was focused on Petitioner when he and the other attacker hit Gutierrez in the head numerous times and pulled him from the car through the window.  Gutierrez did not give a prior description of the attackers, so the third factor is not applicable in this case. Fourth, Gutierrez testified that he looked "for a while" at each suspect in each police car and identified both his attackers "right away."  (PE Tr. at 47.)  Additionally, Gutierrez testified that he knew who they were by their faces.  (PE Tr. at 49.)  Fifth, Gutierrez testified that he identified the Petitioner and Welch only about twenty minutes after the incident.  (PE Tr. at 38.)  *See Howard v. Bouchard*, 405 F.3d 459, 473-74 (6th Cir.2005) (observing that "three months is not a great length of time between an observation and identification").  Moreover, he remained certain of his identification at the time of the Preliminary Examination.  (PE Tr. at 16-20.)  Accordingly, the admission of the on-scene identification was not a violation of Petitioner's due process rights.

Since the on-scene identification was not a violation of Petitioner's due process, counsel's failure to move to suppress that identification was within "the wide range of professionally competent assistance" and was not a violation of *Strickland*.  466 U.S. at 690.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990); *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978).  Petitioner cannot meet performance prong of *Hill*.  474 U.S. at 58-59.

Neither can Petitioner meet the prejudice prong of *Hill.* 474 U.S. at 59. In light of the clear identification of the him at the preliminary examination, there is not a reasonable probability that if the on-scene identification had been suppressed, Petitioner would not have pleaded guilty and would have insisted on going to trial. At the Preliminary Examination, Gutierrez reiterated his identification of Petitioner as the lighter skinned of the two attackers, the man who held the gun and attacked him and the man who drove the car away. (PE Tr. at 16-20.) Since the identification was made again in court, Petitioner cannot show that he would have been prejudiced by the admission of the on-scene identification had he chosen to proceed to trial. For all these reasons, Petitioner's second ground does not merit habeas relief.

## II. Sentence

### A. Individualized Sentence

In Ground III, Petitioner asserts that he was denied due process and his right to an individualized sentence because the court assumed that there was no difference in culpability between his co-defendant and him.[3] (Am. Pet. at 9.) There is no constitutional right to individualized sentencing in non-capital cases. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). Since

---

[3]He additionally claims that the Michigan Court of Appeals and Michigan Supreme Court decision not to rule on this sentencing claim was a denial of due process. However, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented and the Michigan Supreme Court ruled that it was not persuaded that the questions presented by Petitioner should be revived. (10/21/2005 Mich. Ct. App. Order, docket #22; 6/21/2006 Mich. Order, docket #23.) Therefore, this claim was reviewed on the merits by both the Michigan Court of Appeals and the Michigan Supreme Court.

Petitioner has no federal right to an individualized sentence, this ground presents an issue of state law only. Petitioner has not alleged grounds for the court to conclude that this is one of those rare instances where an alleged state-law sentencing error was so egregious that it led to a fundamentally unfair outcome. *See Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)).

B.      *Blakely*

In Ground IV, Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on the United States Supreme Court holding in *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing Mich. Comp.

LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit has now authoritatively held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. Nov. 10, 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007). Therefore, the state court's determination of Petitioner's claim was not contrary to federal law clearly established by the United States Supreme Court or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### Recommended Disposition

For the foregoing reasons, I recommend that the amended habeas corpus petition be denied.


Dated: April 6, 2010                    /s/  Joseph G. Scoville\
                                        United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).